Filed 7/24/24  P. v. Evans CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DWIGHT EVANS,<br><br>        Defendant and Appellant. | B334585<br><br>(Los Angeles County<br>Super. Ct. No. TA135675) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, David E. Madeo, and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Dwight Evans (defendant) appeals the trial court's summary denial of his petition for relief under Penal Code section 1172.6.[1]  Because the record of conviction conclusively establishes that defendant was the shooter of the intended murder victim and was convicted based on his own malice in carrying out the shooting, we affirm the summary denial of relief.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    *The underlying crime*

Defendant, his wife, and Antonio Barnes (Barnes) had known each other for decades, and defendant's wife and Barnes had an on-again, off-again romantic relationship.  Defendant and Barnes grew up together and had both belonged to the same gang, the Bounty Hunter Bloods.

On the municipal election day in March 2013, defendant took his wife to the polling place where she and Barnes were to work that day and waited for Barnes to show up.  When Barnes arrived, defendant greeted him by saying, "what's up, player, player" and invited him to "step outside."  Mere seconds after Barnes followed defendant out the door, a gun was fired three times.  Moments later, Barnes stumbled back through the door,

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We therefore refer to the law formerly codified at section 1170.95 as section 1172.6.

bleeding profusely and crying out for help. He said the shooter was his "girl's old man" and that he should not have been "messing around" with her.

**B.** *Charging, conviction, and appeal*

The People charged defendant with attempted murder. (§§ 187, subd. (a), 189, 664).[2] The People also alleged that the attempted murder was premeditated, that defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)).

The matter proceeded to trial. The trial court instructed the jury (1) on the crime of attempted murder, including the requirement that the jury find that "defendant intended to kill" the victim; and (2) on the allegation of premeditation, including the requirement that the jury find that "defendant acted willfully if he intended to kill when he acted."

A jury found defendant guilty, and found true the allegations that the attempted murder was premeditated, that defendant personally discharged a firearm causing great bodily injury, and that defendant personally inflicted great bodily injury.

The trial court sentenced defendant to prison for 50 years to life, comprised of a base sentence of 25 years to life for the attempted murder plus an additional 25 years to life for the

---

[2] The People also charged defendant with being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and alleged that defendant suffered three prior convictions for which he served prison terms (§ 667.5, subd. (b)). Because those allegations are not implicated in this appeal and do not affect the overall length of defendant's sentence, we will not discuss them further.

firearm enhancement. The court struck the enhancement for the infliction of great bodily injury and struck all three prison priors.

We affirmed the conviction on appeal, but modified the sentence to reflect that defendant was sentenced to life with the possibility of parole, plus 25 years to life. (*People v. Evans* (Feb. 2, 2017, B269394) [nonpub. opn.].)

## II.    Procedural Background

On April 14, 2022, defendant filed a petition seeking resentencing under section 1172.6 and was appointed counsel. The People filed an opposition and attached copies of the jury instructions, the verdict forms, and this court's 2017 opinion. Defendant then filed a brief in support of his petition.

On September 14, 2023, the trial court held a hearing on defendant's petition for resentencing and denied it. The court found defendant had not demonstrated a prima facie case that he qualified for relief under the statute because (1) "the jurors were not instructed on" either the "natural and probable consequences" theory of liability, nor "felony-murder" liability; and (2) defendant was the "actual shooter."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying him relief under section 1172.6.

In 2018, our Legislature amended the definition of "murder" in our State to preclude a jury from "imput[ing]" the "[m]alice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) As amended, liability

4

for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life. (§§ 118, subd. (a)(3), 189, subd. (e).)

Section 1172.6 is the procedural vehicle by which persons convicted of murder and of attempted murder in now-final judgments can seek to vacate convictions that do not satisfy the currently permissible theories for homicide liability. (§ 1172.6, subd. (a).) In assessing whether a defendant seeking relief under section 1172.6 has made out a prima facie case warranting an evidentiary hearing, a trial court must take the petition's factual allegations as true and ask ""“whether the petitioner would be entitled to relief if [those] allegations were proved.”"" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) "“However, if the record, including the court's own documents [from the record of conviction], "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.”"" (*Ibid.*)

Here, the trial court properly determined that defendant did not establish a prima facie entitlement to relief under section 1172.6 for two reasons. First, the record of conviction conclusively establishes that defendant was the sole person involved in the charged crime, and the jury specifically found that defendant was the sole perpetrator when it found that *he*—and not anyone else—personally discharged a firearm causing great bodily injury. Where, as here, "the record makes clear that [a defendant] was the actual killer [or attempted killer] and the only participant in the killing [or attempted killing]," that

5

defendant is not entitled to relief under section 1172.6 as a matter of law.  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233; *People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)  Second, the jury found that defendant personally harbored the intent to kill (and hence intent was not imputed to defendant by virtue of someone else's act).  Before authorizing the jury to convict defendant of attempted murder or to find that he acted with premeditation, the jury instruction required the jury to find that defendant acted with the intent to kill.  The jury was never instructed on a theory by which defendant was *not* the actual attempted killer (and hence was *not* the person acting with the intent to kill):  There was no instruction on direct aiding and abetting, no instruction on felony murder, and no instruction on the natural and probable consequences doctrine.  Where, as here, the record does not permit conviction on a theory of imputed malice, the defendant is not entitled to relief as a matter of law.  (E.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 677.)

Defendant makes what boils down to three arguments in response.

First, defendant urges that the jury instructions in his case make it theoretically possible for his attempted murder conviction to rest on malice imputed from the actual killer because (1) the court instructed the jury that it could "consider evidence of gang activity . . . for the limited purpose of deciding whether . . . [o]ther persons had a motive and opportunity to commit the crimes charged"; and (2) cases like *People v. Langi* (2022) 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 have held that summary denial of a section 1172.6 petition is inappropriate where there is a possibility the conviction rests on imputed malice.  We are unpersuaded.  To be

6

sure, in both *Langi* and *Maldonado*, the courts held that jury instructions that did not *explicitly* allow a jury to convict the defendant by imputing malice could do so *implicitly*. (*Langi*, at pp. 975, 981, 983; *Maldonado*, at pp. 1259-1263, 1266.) But both *Langi* and *Maldonado* involved crimes with multiple perpetrators and jury instructions authorizing the defendant's conviction as a direct aider and abettor that—in light of other ambiguities in the jury instructions—did not *definitively* require a finding by the jury that the defendant personally harbored the requisite malicious intent. Here, however, there was only *one* perpetrator acting alone and no instruction authorizing the conviction of defendant *unless* the jury found he was the actual shooter of the intended victim who acted with the intent to kill. In this factual context, any possible ambiguity in the jury instructions does not create a possibility that the jury imputed someone else's malice to defendant. Section 1172.6 is a means of providing relief when a defendant has been actually convicted on the basis of an invalid theory of homicide; it is not an invitation to flyspeck jury instructions in the abstract.

Second, defendant cites a number of other cases that he asserts support his position. He is wrong. He cites *People v. Offley* (2020) 48 Cal.App.5th 588 for the proposition that the jury's finding that he personally discharged a firearm causing great bodily injury is not conclusive proof that he acted with the intent to kill. This is true, but doubly irrelevant because the finding on this sentencing enhancement is conclusive proof that he was *the actual shooter*, and because the jury's conviction of attempted murder as well as its finding that the attempted murder was premeditated *were* based on a finding of intent to kill. Defendant cites *People v. Montes* (2021) 71 Cal.App.5th 1001

7

for the proposition that being convicted of attempted murder does not necessarily mean that he personally harbored an intent to kill. This is true, but irrelevant because *Montes*—unlike this case—involved multiple perpetrators and a natural and probable consequences instruction; where, as here, the jury was presented with a single perpetrator and instructed that conviction was permissible only if that perpetrator acted with the intent to kill, the ensuing conviction necessarily means that the defendant personally harbored the intent to kill.

Third and lastly, defendant accuses the trial court of making factual findings at the prima facie stage. It did not. The court permissibly examined the record of conviction to see if that record conclusively established that defendant was the actual shooter and acted with the intent to kill. This was entirely permissible under *Lewis*, *supra*, 11 Cal.5th 952 and, contrary to what defendant belatedly asserts in his reply brief, does not offend due process.

### DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

8